**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles J. Harris,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-19-08159-PCT-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Charles Harris's application for Social Security disability benefits. For the following reasons, the Court will reverse the Administrative Law Judge's ("ALJ") decision and remand for further proceedings consistent with this opinion.

**BACKGROUND**

Harris applied for disability benefits and supplemental security income under the Social Security Act for a period of disability beginning in April 2015. (Administrative Record at 15, 200, 204 [hereinafter "R."].) Harris's claim was initially denied on August 11, 2015, and upon reconsideration on December 31, 2015. (*Id*. at 15.) The ALJ held a hearing on December 18, 2017. (*Id.*) On May 15, 2018, the ALJ issued a written decision denying Harris's application, which became the final administrative decision when the Appeals Council denied his request for review on April 9, 2019. (*Id*. at 28, 1.)

The ALJ concluded that Harris had severe impairments in the form of coronary artery disease (status, post myocardial infarction), anxiety disorder, hypertension, post-

traumatic stress disorder, depressive bipolar disorder, alcohol dependence in remission, and neurocognitive disorder. (*Id*. at 18.) The ALJ also concluded, after considering medical evidence and Harris's testimony, that Harris's residual functional capacity ("RFC") was as follows:

> [Harris] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Harris] cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. He can occasionally balance, stoop, crouch, kneel and crawl. He can have no exposure to non-weather extreme heat or extreme cold. He can have only occasional exposure to witness, pulmonary irritants such as fumes/odors/dust/gases and poorly ventilates areas. He can have no exposure to dangerous machinery with moving mechanical parts or unprotected high and exposed heights. Further, he is limited to tasks that can be learned by demonstration within 30 days. He is limited to work having only occasional interaction with coworkers and supervisors. He is limited to work having no fast-paced production rate requirements.

(*Id*. at 20.) Although this RFC precluded Harris from performing past relevant work, the ALJ concluded, after consultation with a vocational expert, that Harris could perform a significant number of jobs in the national economy. (*Id*. at 27-28.) The ALJ thus concluded that Harris was not disabled within the meaning of the Act. (*Id*. at 28.)

## ANALYSIS

I.   <u>Legal Standard</u>

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, district courts must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, which addresses whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

II.     Issues Raised By Harris On Appeal

Harris argues the ALJ improperly discredited the opinions of three treating physicians (Dr. John Motl, Dr. Mathew Kelley, and Dr. Sam Butman) and one other source

(licensed clinical social worker ("LCSW") Cynthia Chaney). (Doc. 14 at 2.)

### A. Medical Opinions Of Treating Physicians

Dr. Motl, Dr. Kelley, and Dr. Butman are all licensed medical professionals who treated Harris and offered medical opinions concerning his condition. (*Id*. at 2, 11-16.) When evaluating a medical opinion, the ALJ considers: (1) whether the physician examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization; and (6) "other factors." 20 C.F.R. § 416.927(c). Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining, non-treating physicians are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When, as here, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 at 1012.

#### 1. Dr. Motl

Dr. Motl evaluated Harris on September 3, 2015. (R. at 505.) Dr. Motl found that Harris had "severe anxiety and depression," "jittery motor function," "difficulty with concentration [and] focus," "impaired memory," and "impaired judgment." (*Id*. at 503.) Dr. Motl further concluded that Harris had "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate" as well as "[a]n anxiety related disorder and **complete** inability to function independently outside the area of [his] home." (*Id*. at 505, emphasis in original.)

The ALJ assigned "little weight" to Dr. Motl's opinion. (*Id*. at 24.) The ALJ

reasoned that (1) the opinion was rendered "after only three months of treatment" and lacked support in "the greater record and [Dr. Motl's] own progress records," which showed that Harris experienced improvement over time; and (2) Dr. Motl "completed/checked boxes on a form, which is less objective than a written explanation of limitations." (*Id.*)  The ALJ identified the following portions of the record as supporting his determination: (1) a medical record from June 2015, which showed that Harris reported depression associated with bereavement over the passing of family members; (2) a medical record from August 2015, which showed that Harris reported "feeling better again"; and (3) a medical record from October 2015, which showed that Harris's "mood had improved" and Harris was "less irritable."  (*Id.*)

Although the ALJ's first reason for rejecting Dr. Motl's opinion—inconsistency with the record as a whole and Dr. Motl's progress notes—can be a specific and legitimate reason for rejecting the opinion of a treating physician, that reason was not supported by substantial evidence here.  The ALJ's finding of inconsistency hinged on the notion that Harris's condition "improved" over the course of his treatment by Dr. Motl.  But a patient's improvement "must be read in context of the overall diagnostic picture . . . .  That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."  *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  *See also Garrison*, 759 F.3d at 1017 (noting that in the mental health context, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

Here, the ALJ cited only two pieces of evidence as proof of improvement—notes from visits in August 2015 and October 2015.  (R. at 558, 672.)  Those notes reflect that Harris reported "feeling better overall, feels his meds are helping" and that his "moods are better, less irritable" during those two particular visits.  (*Id.*)  Although those notes, when

viewed in isolation, do suggest that Harris's condition was improving, the ALJ did not discuss other evidence in the record showing that Harris reported a worsening of his symptoms following those visits. For example, in December 2015, Dr. Motl reported that Harris was "more agitated and anxious." (*Id*. at 682.) And although Harris appeared to have subsequent periods of improvement—in July 2016, he told Dr. Motl that "the meds are working well with no side effects" (*id*. at 693)—this once again wasn't a constant trajectory of improvement. During a later visit with Dr. Motl in September 2016, Harris reported that he "got fired from [his] job because [he] couldn't concentrate" and was concerned his medications were no longer as effective. (*Id*. at 696.) In short, Harris's treatment for mental health issues was not a clean path of improvement. It was error for the ALJ to cherry-pick the notes that reflected temporary improvement, ignore the notes the reflected a worsening of symptoms, and then discredit Dr. Motl's opinion based on its failure to account for Harris's purported improvement. *Cf. Gonzales v. Comm'r of Soc. Sec. Admin.*, 356 F. Supp. 3d 864, 880 (D. Ariz. 2018) (finding error where the ALJ "cherry-pick[ed]" evidence showing improvement and noting that "the medical records illustrate Plaintiff's long-term struggle with mental health issues and document that she continued to struggle with the symptoms of her depression, anxiety, and PTSD despite receiving medication and therapy").

Given this backdrop, the ALJ's next reason for discrediting Dr. Motl's opinion—because it was in checked-box form—was insufficient. As an initial matter, the form wasn't entirely checked boxes. Dr. Motl filled out the first page in writing. (R. at 503.) More important, "there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, . . . physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017). Nor is it clear why the ALJ concluded a checked-box form is "less objective than a written explanation of limitations." (R. at 24.) Although a checked-box form may be less detailed or less individually tailored than a handwritten evaluation, it's hard to see how a form itself could undermine the objectivity of the opinions

expressed in it.

As noted, the ALJ also discredited Dr. Motl's opinion based on a June 2015 note in which Harris stated that he was feeling depression related to the death of family members. In the ALJ's view, this note was discrediting because the depression had "been ongoing for some time and [Harris] worked for many years after his father and brother passed away." (*Id.*)  This reason is also insufficient.  To be clear, the Court does not quarrel with the notion that being able to work and engage in substantial gainful activity is inconsistent with a finding of disability.  *Cf.* 20 C.F.R. § 404.1520 ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."). However, Harris's impairments noted by Dr. Motl were not limited to depression.  They also included "severe anxiety," "jittery motor function," "difficulty with concentration [and] focus," "impaired memory," and "impaired judgment." (R. at 503.)  The ALJ made no effort to show *these* impairments were present during the period when Harris was able to work.  Nor is it clear that Harris's depression was the but-for cause of his inability to work—Dr. Motl opined that Harris had "[a]n anxiety related disorder and a complete inability to function independently outside the area of [his] home." (*Id*. at 505.)  Thus, Harris's track record of working through depression was not a reason to discredit Dr. Motl's opinion.

Finally, the Commissioner argues that Harris's arguments on appeal ignore the opinion of Dr. Fair, whose opinion is "better-supported" and to whom the ALJ assigned greater weight. (Doc. 21 at 14-15.)  However, the ALJ did not mention the opinion of Dr. Fair as a reason for discrediting the opinion of Dr. Motl.  "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1226.

Having concluded the ALJ failed to present specific and legitimate reasons, supported by substantial evidence, to discredit the opinion Dr. Motl, the next inquiry is

whether the error was harmless. An error is harmless if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would have made a different decision absent the error, but whether the ALJ's decision is legally valid despite the error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, the ALJ's decision to discredit Dr. Motl's opinion was not inconsequential to the ultimate non-disability determination. Dr. Motl opined that Harris had "a complete inability to function independently outside the area of [his] home." (*Id*. at 505.) This restrictive view of Harris's impairments is at odds with the ALJ's determination that Harris had the RFC to perform light work with some restrictions. Accordingly, this error was not harmless and reversal on this issue is required.

        2.        Dr. Kelley

Dr. Kelley evaluated Harris on August 19, 2015. (*Id*. at 501.) Dr. Kelley found that Harris had "obsessive worry, anxiety, depression, [and] insomnia." (*Id.*) Dr. Kelley also noted that Harris had made "no improvement yet," "may make slow progress," and had become "difficult to employ." (*Id*. at 501-02.)

The ALJ assigned "limited weight" to Dr. Kelley's opinion because (1) the evaluation was "completed after just 3 months of treatment . . . so it is not an accurate assessment in light of [Harris's] overall treatment history," (2) "later treatment notes from Dr. Kelley show [Harris] has experienced some improvement and has . . . worked part-time," and (3) "the opinions are issues reserved to the Commissioner and not supported by the evidence as a whole." (*Id.* at 23.)

The ALJ's first proffered rationale for rejecting Dr. Kelley's opinion fails for the same reason as his first proffered rationale for rejecting Dr. Motl's opinion. Although the length of a treatment relationship and inconsistency with treatment notes are, in general, specific and legitimate reasons for rejecting a medical opinion of a treating physician, *see* 20 C.F.R. § 416.927(c), those reasons were not supported by substantial evidence here.

Notably, the ALJ failed to cite any portion of the record to support his belief that Dr. Kelley's opinion was reached after a short amount of time and was inconsistent with Harris's overall treatment history. Nor did the ALJ attempt to explain these assertions. This is insufficient. *Cf. Larrison v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1150051, *2 (D. Ariz. 2020) ("It is not sufficient for an ALJ to identify a . . . physician's opinion, summarize the clinical evidence, and then offer the *ipse dixit* that the two are in conflict—reasoning and explanation are required.").

The ALJ's second proffered reason for discrediting Dr. Kelley's opinion—failure to account for subsequent "improvement"—was also insufficient. As noted in the previous section of this order, an isolated instance of "improvement" is not enough to discredit a treating physician's opinion when it is coupled with cycles of worsening symptoms. *Holohan*, 246 F.3d at 1205. Moreover, the ALJ's only citation in support of his contention that Harris's condition "improved" is a non-specific citation to a 96-page record of mental health visits, making it difficult to review the supposed trajectory of improvement the ALJ saw. (R. at 23.) Finally, it's not obvious to the Court, having reviewed the portion of the record cited by the ALJ, that Harris's trajectory was one of steady improvement. During one visit in January 2016, Dr. Kelley noted that "[a]nxiety and PTSD has been increasing this month" and that Harris was "[s]till very anxious and fearful. Isolated and hopeless." (*Id.* at 683.) Another treatment note within the portion of the record cited by the ALJ, which is dated April 2017 (*i.e.,* nearly two years after Dr. Kelley rendered his opinion), characterizes Harris as "noticeably anxious and tense" and "gets discouraged about the lack of progress from psychiatric meds and therapy." (*Id.* at 721.)

The ALJ's final reason for discrediting Dr. Kelley's opinion—that "the opinions are issues reserved to the Commissioner and not supported by the evidence as a whole" (*id.* at 23)—was also insufficient. The ALJ was presumably referring to the portion of Dr. Kelley's opinion indicating that Harris had become difficult to employ. The Court agrees that this portion of Dr. Kelley's opinion could be construed as an attempt to opine on an issue reserved to the Commissioner. *Cf. Titles II & XVI: Med. Source Opinions on Issues*

*Reserved to the Comm'r*, SSR 96-5p (S.S.A. July 2, 1996), 1996 WL 374183, *1 ("issues reserved to the Commissioner . . . include[e] . . . whether an individual's RFC prevents him or her from doing past relevant work . . . and whether an individual is 'disabled' under the [Act]."). However, the ALJ wasn't entitled to summarily reject all of Dr. Kelley's opinions on other, permissible topics due to this one instance of overreach.

Turning to harmless error analysis, Harris's opening and reply brief provide no argument concerning the ramifications of the ALJ's error in rejecting Dr. Kelley's opinion. The Court concludes this error was inconsequential to the ultimate non-disability determination. Although Dr. Kelley found that Harris's impairments and symptoms included "obsessive worry, anxiety, depression, [and] insomnia," the ALJ found that Harris had severe impairments of anxiety disorder, post-traumatic stress disorder, and depressive bipolar disorder. (R. at 501, 18.) Harris doesn't explain why these findings are inconsistent and the Court may only review issues raised by the party challenging the decision. *Lewis*, 236 F.3d at 517 n.13.

### 3. Dr. Butman

Dr. Butman completed a questionnaire concerning Harris's coronary artery disease on November 4, 2015. (*Id.* at 598-601.) Dr. Butman opined that Harris was capable of low stress jobs; could sit for two hours at a time and for a total of two hours in an eight-hour workday; could stand for one hour at a time and for less than one hour in a workday; could walk no more than two city blocks without severe pain or a need for rest; could never lift and carry more than 50 pounds; could only occasionally lift and carry 20 pounds; could never climb ladders; could only occasionally twist, stoop, crouch, and climb stairs; and would likely miss about two days of work per month due to his impairments. (*Id.*)

The ALJ assigned "little weight" to Dr. Butman's opinion because (1) it was inconsistent with the greater record, (2) it was based mostly on Harris's subjective complaints, (3) it was not supported by Dr. Butman's own treatment records, and (4) Harris's cardiovascular condition had improved since the evaluation. (*Id.* at 25.)

The third reason offered by the ALJ was sufficient. Among the medical records

cited by the ALJ was a May 2016 treatment record in which Dr. Butman reported by Harris had "no chest discomfort with daily activities," "no exercise intolerance," and was generally "doing okay." (*Id.* at 612.) The ALJ could have permissibly viewed these observations—particularly the observation that Harris could exercise without any intolerance—as inconsistent with the extreme physical limitations to which Dr. Butman opined. Additionally, the ALJ did not merely include a generic cross-reference to Dr. Butman's treatment records but provided a reasoned explanation for the finding of inconsistency. Finally, although Harris has identified certain records that he views as proof of a subsequent deterioration in his heart condition (Doc. 14 at 16), these records do not reflect that same sort of "[c]ycle[] of improvement and debilitating symptoms," *Garrison*, 759 F.3d at 1017, that was present with respect to Harris's mental condition.

Given this determination of sufficiency as to the ALJ's third reason, the Court need not address the sufficiency of the ALJ's other bases for rejecting Dr. Butman's opinion.

### B. Opinion Of Treating Therapist

"[O]nly licensed physicians and certain other qualified specialists are considered acceptable medical sources" whose opinions cannot be rejected unless by "specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations and brackets omitted). "Other sources . . . are not entitled to the same deference" and "[t]he ALJ may discount [their] testimony . . . if the ALJ gives reasons germane to each witness for doing so." *Id*. (quotations omitted).[1] "The Ninth Circuit has not defined 'germane' in the context of rejecting the opinion from an 'other source,'" but other courts in this district have defined "germane" in this context as "relevant" or "pertinent." *Schwab v. Colvin*, 2016 WL 4168761, *9 (D. Ariz. 2016) (*citing* Black's Law Dictionary (7th ed. 1999)).

LCSW Chaney completed a mental RFC questionnaire for Harris on December 14,

---

[1] The regulation upon which this standard was based was rescinded on March 27, 2017. *Powers v. Comm'r of Soc. Sec. Admin.*, 2018 WL 1182554, *2 n.2 (D. Ariz. 2018). However, the prior regulations apply because Harris filed his claim for benefits in 2015. *Cf. William H. v. Comm'r of Soc. Sec.*, 2020 WL 5056451, *2 (W.D. Wash. 2020) (applying the new regulations because claimant filed for benefits after March 27, 2017).

2017. (R. at 797-800.) LCSW Chaney concluded that Harris was either "[u]nable to meet competitive standards" or had "[n]o useful ability to function" in almost all abilities or aptitudes needed to perform unskilled, semiskilled, or skilled work. (*Id*. at 799.) LCSW Chaney additionally noted that Harris "cannot maintain focus," is "continuously preoccupied with anxious thoughts," "cannot tolerate stress of any kind," and is "unable to carry on conversations and interact with others." (*Id*. at 799-800.) Chaney also stated that Harris appeared to have a "'guarded' prognosis, meaning that improvement is unlikely." (*Id*. at 797.)

The ALJ assigned "little weight" to LCSW Chaney's opinion, reasoning that (1) "she provided no explanation for such extreme limitations," (2) her opinion was "not supported by progress records, which at one point stated the claimant was 'stable,'" (3) "social workers are not acceptable medical sources for opinion evidence," and (4) "her opinion is not consistent with the evidence as a whole, which was detailed above." (*Id*. at 24.)

Here, the ALJ provided at least one germane reason for discrediting LCSW Chaney's opinion. The ALJ identified evidence in the record that contradicted the extreme limitations in LCSW Chaney's opinion, citing a record that stated that Harris was "stable" and "doing well" with a part-time job he had secured. (R. at 24, 644.) The Ninth Circuit has held that "[i]nconsistency with medical evidence" is a germane reason sufficient to discredit testimony from other sources. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Deluca v. Berryhill*, 721 Fed. App'x 608, 611 (9th Cir. 2017) ("The ALJ provided a germane reason for discounting Ms. Martin's statement, namely, its inconsistency with the objective medical evidence.").

Although the ALJ's discussion of LCSW Chaney's opinion was not particularly detailed, Harris doesn't provide support for his contention that an ALJ must consider the factors provided by SSR-06-3p, 2006 WL 2329939, when rejecting an opinion from an "other source." (Doc. 14 at 17.) In fact, the relevant regulations themselves, not to mention Ninth Circuit case law, are to the contrary. The relevant regulation concerning the

evaluation of opinion evidence states that "[a]lthough we will consider [other source] opinions using the same factors listed in paragraph (c)(1) through (c)(6) in this section," the same factors provided in SSR 06-3p, "*not every factor for weighing opinion evidence will apply in every case* because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1) (emphasis added). And applying the "germane reasons" standard, the Ninth Circuit has upheld ALJ decisions discrediting other-source opinions based solely on inconsistency with medical evidence. *Deluca*, 721 Fed. App'x at 611. It was not error for the ALJ to discredit LCSW Chaney's opinion based solely on its inconsistency with the medical evidence.

III.   Remand For Further Proceedings Is Appropriate

Harris requests that the Court remand for an award of benefits or, alternatively, for reconsideration of the evidence. (Doc. 14 at 18.)

In general, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The alternative, a remand for benefits, is appropriate only in "rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or claimant testimony. *Id*. at 1100-01. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted). Additionally, "even when those rare circumstances are present, [t]he

decision whether to remand a case for additional evidence or simply to award benefits is in [the Court's] discretion." *Id.* at 1101-02 (quotations omitted).

Here, only the first element is present. The ALJ committed reversible error by failing to provide legally sufficient reasons for rejecting the opinion of Dr. Motl. Nevertheless, some conflicts and ambiguities remain unresolved (for example, the extent to which therapy and medication have improved Harris's condition over time). Moreover, the Court has serious doubts about whether a finding of disability is inevitable. Thus, this case will be remanded for further proceedings.

**IT IS THEREFORE ORDERED** reversing the decision of the ALJ and remanding for further administrative proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 7th day of October, 2020.

Dominic W. Lanza
United States District Judge